(No. 62469.— )

MATTHEW A. MALONEY, Public Defender, Plaintiff, v. ALEXANDER T. BOWER, Chief Judge, *et al.*, Defendants.

*Opinion filed September 17, 1986.*

Matthew A. Maloney, Public Defender, *pro se* (Donald R. Rayfield and Ann Burkey, of counsel), of Princeton, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Joan G. Fickinger, Assistant Attorneys General, of Chicago, of counsel), for respondents.

JUSTICE WARD delivered the opinion of the court:

On September 16, 1985, Alexander T. Bower, chief judge of the Thirteenth Judicial Circuit, which is comprised of La Salle, Bureau and Grundy counties, entered an administrative order directing judges of the circuit to appoint the office of the public defender to represent indigent defendants in civil contempt proceedings in which the defendant might be subject to incarceration.

Our constitution provides for administrative authority for chief judges: "Subject to the authority of the Supreme Court, the Chief Judge shall have general administrative authority over his court." (Ill. Const. 1970, art. VI, sec. 7(c).) See also our Supreme Court Rule 21 (103 Ill. 2d R. 21). The order which is the subject of the action here reads:

"In civil contempt proceedings where an election might be made to incarcerate the defendant, said judge is to ap-

point to defend said indigent client the office of the Public Defender of the county of which said case is being tried."

Copies of the order were sent to circuit and associate judges in the Thirteenth Judicial Circuit and to other persons, including the public defenders of La Salle, Bureau and Grundy counties. Copies of the order were accompanied by a letter which in part stated:

In view of the recent ruling of the Federal Court in the matter of: *Sevier vs. Turner, 742 F.2d 262 (Sixth Circuit, 1984)*, concerning representation of defendants during civil contempt proceedings where an election might be made to incarcerate said defendant, an Administrative Order has been entered authorizing the judges in such cases to appoint the Public Defender to represent such defendants. ***"

Pursuant to the order, Matthew A. Maloney, the public defender of Bureau County, was appointed to represent Steven Mealman. Upon the appointment Maloney filed a motion for leave to file a complaint with this court for an original writ of prohibition. We granted the motion (87 Ill. 2d R. 381).

The plaintiff alleges that on September 25, 1985, Steven Mealman appeared before Judge C. Howard Wampler on a rule to show cause because of failure to pay child support as the court had previously ordered. The judge announced that if he found that Mealman had wilfully failed to pay support when he had the ability to do so, he would be held in contempt of court and "most likely" sentenced to jail or incarcerated until he paid the amount due. Upon learning that Mealman could not afford the services of an attorney the judge appointed Maloney to represent him.

The plaintiff further set out that on September 25, Judge Wampler and Judge James J. Wimbiscus advised the plaintiff that in all civil matters where incarceration

might or could be imposed upon an indigent defendant as a result of the defendant's failure to comply with any order entered by them pursuant to the chief judge's order, the plaintiff would be appointed to represent those defendants. It was then that the plaintiff moved for leave to file a petition for a writ of prohibition on the grounds that the chief judge, in entering the order, exceeded the authority to enter general orders (citing 94 Ill. 2d R. 21(b)), and that a writ of prohibition is the only adequate remedy available to the plaintiff.

Under the Constitution of Illinois of 1970, this court is authorized to exercise original jurisdiction in cases, *inter alia*, relating to writs of prohibition. (Ill. Const. 1970, art. VI, sec. 4(a); *Hughes v. Kiley* (1977), 67 Ill. 2d 261, 266.) The purpose of a writ of prohibition is to allow a court of superior jurisdiction to prevent one of inferior jurisdiction from exercising jurisdiction beyond its legal authority, and to restrain that court from further action in the cause involved when damage and injustice are likely to result from the inferior court's action. *Hughes v. Kiley* (1977), 67 Ill. 2d 261, 266.

It is generally said that for a writ of prohibition to be issued four conditions must be satisfied: the action sought to be prohibited must be judicial in nature; the jurisdiction of the court against which the writ is to be issued must be inferior in jurisdiction to the issuing court; the action sought to be prohibited must be either outside the inferior court's jurisdiction or beyond its legitimate authority; and there must be no other adequate remedy available for the party seeking the writ. (*People ex rel. No. 3 J.& E. Discount, Inc. v. Whitler* (1980), 81 Ill. 2d 473, 479-80.) While the last condition has been variously interpreted, "[t]he usual circumstance in which it is satisfied involves a petitioner for the writ who will suffer some injury due to the unauthorized exercise of jurisdiction that cannot be remedied by vindicating his

rights on appeal. [Citations.]" 81 Ill. 2d 473, 484.

The parties agree that the first two conditions are satisfied. It is disputed whether the third and fourth conditions are met.

The plaintiff argues that Judge Bower's authority to enter general orders does not extend to ordering the office of public defender to provide representation for indigent civil contemnors who may be subject to incarceration, because the Public Defender Act (Ill. Rev. Stat. 1985, ch. 34, par. 5604) does not authorize such representation. The defendants contend that under the chief judge's general administrative authority (citing Ill. Const. 1970, art. VI, sec. 7(c)), there was authority to appoint public defenders to represent indigent civil contemnors under the Public Defender Act (Ill. Rev. Stat. 1985, ch. 34, par. 5604). They say that the chief judge entered the order because, citing *People ex rel. Bier v. Scholz* (1979), 77 Ill. 2d 12, 19, "[c]ourts have inherent powers to protect *** the public they serve against default of their constitutional obligations," and have authority to preserve indigent civil contemnors' constitutional right to assistance of counsel.

The issue here does not focus on constitutional rights of individuals to counsel, or on constitutional obligations of courts to appoint counsel, but on whether the chief judge had authority to appoint the legislatively created office of the public defender to represent indigents in civil contempt proceedings.

To determine whether the chief judge exceeded his authority, we look to section 4 of the Public Defender Act, in which the legislature stated the circumstances when the public defender may be appointed to serve as an attorney for indigents:

"The Public Defender, as directed by the court, shall act as attorney, without fee *** for all persons who are held in custody or who are charged with the commission

of any criminal offense, and who the court finds are unable to employ counsel." Ill. Rev. Stat. 1985, ch. 34, par. 5604.

It is fundamental that courts, when interpreting a statute, must ascertain and give effect to the legislature's intention in enacting the statute. In doing so courts must give the language of the statute its plain and ordinary meaning.

" 'It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of .the statute imports.' " *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139, citing *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.

The statutory meaning is clear. The plain language of section 4 shows that the intent of the legislature, in creating the office of the public defender, was to limit the duties of the public defender to representing indigent persons "held in custody or who are charged with the commission of any criminal offense." Courts, when acting under the Public Defender Act, can make appointments only as the Act provides. A chief judge, in exercising his authority to issue general orders for the administration of the courts, cannot use that authority to enlarge the duties of the office of the public defender beyond what the legislature has provided. If there are to be new responsibilities for the public defender's office it will be for the legislature to define them.

It is not inappropriate to observe that in many places of the State offices of the public defender are now over-

burdened and struggle to fulfill their statutory obligations to provide representation for the indigent. This condition is not relevant to deciding the question before us, but it explains in part the unwillingness of those given the important responsibilities of public defenders to assume obligations beyond what the Public Defender Act imposes.

The letter of the chief judge which accompanied the order stated that the order had been entered "in view of" *Sevier v. Turner* (6th Cir. 1984), 742 F.2d 262, 267. In *Sevier*, it was held that an indigent father who had been incarcerated for failing to pay child-support payments was "entitled to have the assistance of counsel." The court, citing *Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 25-26, 68 L. Ed. 2d 640, 648-49, 101 S. Ct. 2153, 2158-59, stated that the relevant question in determining if a defendant is entitled to the assistance of counsel during a civil contempt proceeding of the type involved is "whether the court in fact elects to incarcerate the defendant." (*Sevier v. Turner* (6th Cir. 1984), 742 F.2d 262, 267.) But *Sevier* obviously did not hold that the defendant's right to counsel was to be satisfied by appointment of a public defender. The question whether a defendant has a constitutional right to counsel under the circumstances defined here is not before us. The only question, as we stated, is whether the chief judge had authority to order the public defender's office appointed to provide representation under circumstances stated in his order.

The citation of *Tedder v. Fairman* (1982), 92 Ill. 2d 216, is not helpful to the respondent. There the court upheld the trial court's appointment of a public defender to defend two indigent prisoners in civil actions regarding conditions of their confinement. This court held that the Public Defender Act expressly authorized the public defender's representation of indigent persons "held in cus-

tody." (*Tedder v. Fairman* (1982), 92 Ill. 2d 216, 226.) Too, and significantly, the court noted the heavy caseloads in public defender offices, and stated that appointments of public defenders to represent indigent prisoners was not a duty of trial courts but was within their discretion. The court stated that such appointments were to be limited to situations involving grievances related to a defendant's confinement. *Tedder v. Fairman* (1982), 92 Ill. 2d 216, 227. See also *Doherty v. Caisley* (1984), 104 Ill. 2d 72 (holding that the appointment of the public defender concerning grievances relating to confinement was not a duty of the trial court but simply within its discretion).

The defendants' argument that the complaint for a writ of prohibition should be denied because alternative remedies, such as a writ of *mandamus* or a supervisory order, are available is unconvincing. There is no reason why a writ of prohibition should be refused on the ground that a writ of *mandamus* or a supervisory order could effect the same result. More than one remedy may be available to meet a problem. In any event, it seems particularly appropriate to prohibit, as we do here, the enforcement of an order which was beyond the court's authority to enter.

Accordingly, the writ of prohibition is awarded.

*Writ awarded.*